*J. F. Quillin,* for appellant.

*W. L. Parker,* for appellee.

HOLT, J. Appellee, W. J. Wheat, sued appellant to recover damages growing out of injuries to crops of corn, beans, hay and potatoes belonging to appellee. It was alleged in appellee's complaint that appellant tore down the fence enclosing appellee's crops and caused appellant's, and other cattle, to enter and damage and destroy most of these crops. Appellee further alleged that appellant by force and threats prevented him from harvesting his potatoes. Appellant answered with a general denial.

A jury awarded appellee damages in the amount of $228.60, and from the judgment comes this appeal.

The facts stated most favorably to appellee, as we must do, are to the following effect: Appellee testified that his crops were enclosed by a fence and that appellant tore this fence down and turned his (appellant's) cattle in and that they damaged his crops in the amount of $237.70; that appellant said to him, "If I can't get what I want, I will tear the fence down and let the stock eat up your crop," and "If I don't get what I want, even if the law says I don't, I will tear my fence down and let the cattle eat up your damn crop."

Chester Wheat, appellee's soldier son, testified that he took a mule and a wheelbarrow, and, assisted by his niece, attempted to harvest his father's potato crop. "Q. Did you go down at your father's request to dig potatoes that he had raised on the place? (appellee's). A. Yes, sir. A. I led the mule and I pushed the wheelbarrow with the plows to the edge of the potato patch. I left the plows and started to walk over to dig the potatoes." He testified that appellant came over "with a shotgun in his hand" and "told me I wasn't going to start digging potatoes there" and "then he started throwing rocks at the mule" and "he hit me." He had the gun in his left hand and threw rocks with his right. He said he would kill me like he would a snake; I rather called his bluff on that and he started throwing rocks. He told Maxine (Wheat's niece) to get out of the way so he could shoot me. When he hit me I took the mule and left the patch and everything there and went on back to the house. There was other testimony of corroborative effect.

The court on its own motion submitted but two issues for the jury's consideration in instructions 1 and 2, as follows: "1. If you find from a preponderance of the evidence in this case that the defendant purchased the lands which plaintiff was farming, and by threats, violence and intimidation prevented plaintiff, or his agents, from harvesting his share of said crops, as alleged in the complaint, then your verdict will be for the plaintiff for the fair cash market value of plaintiff's share of said crops.

2. If you find from a preponderance of the evidence that plaintiff made a corn crop on said lands, and that defendant turned his cattle in on said corn crop, and allowed his cattle to destroy said crop, then you will find for the plaintiff, and you will assess his damages at the fair market value of plaintiff's share of said corn crop at the time it was so destroyed.''

It is our view that the court by these instructions correctly applied the law to the facts presented and that there was ample evidence of a substantial nature to support the jury's verdict.

Appellant argues that appellee did not have a lawful fence enclosing his crops in compliance with § 5737 of Pope's Digest, and since there was no law preventing cattle from running at large in the area where the damages to appellee's crops occurred, appellee was not entitled to recovery.

We cannot agree with this contention.

On the facts presented by this record, there was substantial evidence from which the jury was warranted in finding that appellant had committed a willful trespass by tearing down the fence enclosing appellee's crops and causing cattle to enter and destroy, or damage, them and by forcibly preventing appellee from harvesting his potatoes. In these circumstances, it could make no difference that there was no stock law in effect at the time and that appellee was not protected by a lawful fence, under the statute, *supra*. Appellant would be liable to appellee for any damages resulting from such trespass and this would be true whether the cattle in question belonged to appellant or to others.

The rule is stated in 3 C. J. S., p. 1298, § 187. ''a. Willful Trespasses. Even where the common-law rule has been rejected and animals are permitted to run at large, or there are fencing laws precluding recovery for the trespasses of animals by those who have failed to protect their lands by a lawful fence, it is almost uniformly held that there can be recovery for trespasses resulting from the willful or intentional act of the animal owner irrespec-

tive of whether or not the landowner has fenced his premises.''

Appellant also says that the verdict is excessive. We are of the opinion, however, that there was ample testimony to support the jury's award of $228.60.

Finding no error, the judgment is affirmed.

MILLWEE, J., disqualified and not participating.

Opinion delivered April 30, 1945.